IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDI BARZYK, | : | Civil No. 1:24-CV-0956 |
| Plaintiff, | : | |
| v. | : | |
| BENVENUTI ARTS, INC., | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is the motion to dismiss filed by Defendant Benvenuti Arts, Inc. ("Benvenuti") asking the court to dismiss the complaint filed by Plaintiff Brendi Barzyk ("Barzyk") for failure to state a claim upon which relief can be granted. (Doc. 13.) Barzyk alleges that she was subjected to a hostile work environment at Benvenuti due to sexual harassment. (Doc. 1.) For the reasons that follow, the motion to dismiss will be granted.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Barzyk began working for Benvenuti as an Operations specialist on February 3, 2023. (Doc. 1, ¶ 24.) She was encouraged to apply for this position by her upstairs neighbor and longtime acquaintance, Alex Knapp ("Knapp"), who was Benvenuti's Director of Operations and Human Resources. (*Id.* ¶¶ 18–20). Her employment application contained reference to the information that Baryzk was a domestic violence survivor and suffering from post-traumatic stress disorder

1

("PTSD").  (*Id.* ¶ 22.)  On Barzyk's first day of work, February 3, 2023, she attended a remote, virtual training session with Knapp and several other new employees.  (*Id.* ¶ 29.)  During the meeting, Knapp informed the group that if they had "comments or complaints," they could send them to human resources, but if the complaints were about Knapp, "then do not send them at all."  (*Id.* ¶¶ 30, 31.)  This meeting was interrupted by an audible crash in Knapp's office, which Knapp explained was a "14-inch machete."  (*Id.* ¶¶ 32, 33.)  At the end of the meeting, an employee attending the session commented that he was going to an art event after the meeting and Knapp responded along the lines of "Oh, I guess you are going to a weird art orgy."  (*Id.* ¶¶ 34, 35.)

    Barzyk and Knapp had a virtual one-on-one after the group meeting, during which Knapp mentioned and displayed the sex toys Knapp owns.  (*Id.* ¶ 37, 38.)  During this conversation, Baryzk's toddler son walked into the room and "[a]s her son was visibly on her camera, Mr. Knapp showed a 'cock ring' on camera and stated words to the effect of 'this is jewelry that is worn on the male genitalia.'"  (*Id.* ¶ 40.)  Knapp again mentioned his machete and "supply of 'emergency cocaine.'"  (*Id.* ¶ 41.)

    Barzyk and Knapp had another virtual on-on-one meeting on February 5, 2023.  (*Id.* ¶ 42.)  Knapp began discussing a different employee, stated how Knapp

2

hoped the employee would "come in a maid outfit[,]" and also commented on "the things they would do to this guy." (*Id.* ¶¶ 44, 45.)

On February 8, 2023, Baryzk received an assignment from Knapp around 2:00 a.m. via email, which also contained the employee handbook and equal opportunity employer policy. (*Id.* ¶ 46, 48, 49.) The employee handbook allegedly directs employees to report discrimination or harassment to the Director of Operations and Human Resources, which is Knapp. (*Id.* ¶ 49.) Barzyk alleges she never saw the complaint procedure while employed with Benvenuti. (*Id.* ¶ 50.)

Baryzk and Knapp were scheduled for another one-on-one meeting, however, Barzyk became too anxious to attend the meeting and requested that it be rescheduled. (*Id.* ¶¶ 51, 52.) On February 10, 2023, Barzyk sent a resignation letter, which included an explanation of Knapp's behavior and comments, to CEO Sarah Benvenuti. (*Id.* ¶ 28, 53.) After Barzyk resigned, Knapp began text messaging Barzyk's mother, sending "a total of approximately seventeen (17) screenshots;" stating Knapp was going to resign to save face, and then continued to "harass Plaintiff's mother for the next several days." (*Id.* ¶¶ 57–59.)

On August 9, 2023, Baryzk filed a charge of discrimination with the United State Equal Opporutnity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (*Id.* ¶ 7.) Barzyk received a notice of right to sue from the EEOC on March 11, 2024. (*Id.* ¶ 8.) On June 10, 2024, Barzyk filed

3

the instant complaint, which alleges one count alleging a hostile work environment due to sexual harassment under Title VII as well as one count alleging a hostile work environment due to sexual harassment under the Pennsylvania Human Relations Act ("PHRA"). (*Id.* ¶¶ 61–76.)

Benvenuti filed a motion to dismiss and brief in support on August 30, 2024. (Docs. 13, 14.) Barzyk filed a brief in opposition on October 19, 2024. (Doc. 19.) Benvenuti replied on November 1, 2024. (Doc. 20.) Accordingly, the motion to dismiss is fully briefed and ripe for disposition.

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. §§ 1331 because plaintiff raises claims under federal statue 42 U.S.C. § 2000e. This court also has supplemental jurisdiction over the PHRA claim under 28 U.S.C. § 1367 because the state law claim is sufficiently related to the federal claim. Venue is appropriate under 28 U.S.C. § 1391 because all actions or omissions alleged occurred in the Middle District of Pennsylvania.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3rd Cir. 2020).

## DISCUSSION

Benvenuti argues Baryzk has failed to state a claim for hostile work environment for three reasons: (1) she was "not subjected to intentional discrimination because of her sex;" (2) the alleged misconduct was not sufficiently severe or pervasive, and (3) "Barzyk made no attempt to resolve her alleged issues with Knapp before voluntarily resigning her position." (Doc. 14, p. 2.)[1] With respect to the first argument, Bevenuti argues that Barzyk has not stated a hostile work environment claim due to her sex. (*Id.* at 6.) Benvenuti argues that several

---

[1] For ease of reference, the court uses the page numbers contained in the CM/ECF header.

allegations against Knapp have nothing to do with sex at all, there are no allegations that "Knapp singled her out for special or different treatment because of her gender[,]" and that some comments Knapp made were directed at individuals of both genders. (*Id.* at 6, 7.) On the second argument, Benvenuti argues Baryzk has failed to allege severe or pervasive discrimination because "Barzyk can only point to three instances where Knapp allegedly made inappropriate comments in Barzyk's presence while she was employed by [Benvenuti]." (*Id.* at 9.) As to the third argument, Benvenuti argues Barzyk fails to allege she was constructively discharged because she has complained only of Knapp's conduct and made no attempt to address her concerns before resigning. (*Id.* at 10.)

    First, Barzyk argues she has sufficiently alleged intentional discrimination due to her sex because "Knapp's comments [were] sexual, explicit and directed only at Plaintiff." (Doc. 19, p. 14.) Barzyk also challenges Benvenuti's argument that Barzyk did not suffer discrimination because of her sex because Knapp made comments about men and women by pointing to the Supreme Court's decision in *Bostock v. Clayton County*, in which, Barzyk argues, the court "rejected the argument that Defendant relies on here when [the Court] recognized that it is not a defense 'for an employer to say it discriminates against both men and women because of sex.'" (*Id.*) (quoting *Bostock v. Clayton Cnty, Georgia*, 590 U.S. 644, 649 (2020)). Barzyk also distinguishes the case law Benvenuti cited for the

proposition that "sexual harassment directed at male and female employees negates employer liability." (*Id.* at 15–17.)

Second, Barzyk argues the sexual harassment was sufficiently severe or pervasive because, although only employed at Benvenuti for one week, she experienced "vulgar, sexual comments [made] to her individual and in a group setting on three (3) separate occasions over three (3) days[.]" (*Id.* at 18, 19.) Third and finally, Barzyk argues she has alleged she was constructively discharged because she has alleged the conditions were so intolerable a reasonable person would have resigned. (*Id.* at 20–22.)

Benvenuti replies that Barzyk has not alleged that Knapp was motivated by sexual desire for Baryzk specifically, as required by the cases relied upon by Barzyk. (Doc. 20, pp. 3–5.) Benvenuti also argues that Barzyk misrepresents Benvenuti's argument and *Bostock*, and clarifies that *Bostock* stands for the proposition that "in determining whether there has been discrimination, the 'focus should be on individuals, not groups[[.]" (*Id.* 6, 7.)

Both parties argue over whether the court should consider an excerpt of the employee handbook, which Benvenuti attached to its motion to dismiss. (Doc. 13-1.) The court will not address these arguments because it finds it unnecessary to consider the handbook.

7

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is discrimination based on one's sex. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S 57, 65 (1986).[2] Sexual misconduct, such as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . ." constitutes sexual harassment "whether or not it is directly linked to the grant or denial of an economic *quid pro quo*, where 'such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Id.* (quoting 29 CFR § 16041.11(a)(3)).

In order to state a claim for a hostile work environment, an employee must show "(1) the employee suffered intentional discrimination because of [her] sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the [employee], (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of *respondeat superior* liability." *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir.

---

[2] The court will consider the Title VII and PHRA together because the analysis is identical under both statutes. *Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3d (3d Cir. 2001), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

2007).  As noted by Barzyk, Benvenuti challenges only whether Barzyk has alleged the first two elements of the claim.  Because it is dispositive, the court will only address the first element.

With respect to the first element, the "[o]ffensive conduct need not necessarily include obvious sexual overtones in order to constitute unlawful harassment or discrimination." *Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 412 (D.N.J. 2003) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1485 (3d Cir. 1990)).  Instead, only "a showing that [plaintiff's gender was] a substantial factor in the harassment, and that if the plaintiff had been [male] she would not have been treated in the same manner[]" is required.  *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996).  As the Supreme Court has noted, it has "never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale*, 528 U.S. 75, 80 (1998).  Rather, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*dicriminat[ion]* . . . because of . . . sex.'" *Id.* (emphasis in original).

Barzyk has failed to allege that she was subjected to discrimination because of her sex.  Barzyk has alleged three situations in which Knapp made sexual or inappropriate comments while she was present virtually, but there are no

allegations that these comments were directed to her or about her.  As alleged, Knapp made a comment about a male coworker going to an orgy during a remote group meeting, Knapp discussed and showed Barzyk his cock ring during an individual remote meeting, and Knapp made sexually charged comments about a different coworker during an individual remote meeting.  While showing one's intimate items to a coworker or expressing sexual desire for a different coworker is clearly inappropriate, there are no allegations that Knapp did these actions or made these comments because of Barzyk's sex, just that they generally had to do with the topic of sex.  For example, there are no allegations that Knapp's conduct would have been different had Barzyk been a male.  Accordingly, the court finds that Barzyk has failed to allege the first element of a hostile work environment claim and Benvenuti's motion to dismiss will be granted.

Because this is sufficient to warrant dismissal of the complaint, the court will not address the parties' remaining arguments.  The complaint will be dismissed without prejudice and with leave to amend as amendment would not be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *See also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (requiring courts offer leave to amend in civil rights cases "unless doing so would be inequitable or futile.").

## CONCLUSION

The motion to dismiss will be granted because Barzyk has failed to allege she was discriminated against because of her sex.  An order follows.


s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Date:   February 10, 2025